# Finn *versus* Providence Gas and Water Company.

1. Where under the provisions of the Act of April 14th 1834, §§ 124, 156 and 159, P. L. 363-8, a jury is struck, and a special venire is issued to the sheriff commanding him to cause the said jurors, or six of the first twelve of them, to view the place in controversy; and the sheriff makes return that he has caused the said six jurors to make said view, and on the trial of the cause, said six jurors are empanelled, the residue of the petit jury must be called from the names attached to the special venire. Those names cannot be called which have been previously stricken off by the parties from the general list.

2. Where in such case, a juror whose name has been stricken off, is

[Finn *v.* Providence Gas and Water Co.]

called and permitted to serve, the Supreme Court will not reverse, unless the record discloses that one of the parties has in consequence been deprived of one of his peremptory challenges.

3. A party, having appealed from an award of viewers assessing damages to him for the taking of part of his lands with the springs thereon, by a water company, for the construction of a reservoir, brought evidence on the trial to show that there were no other springs on his land outside the line of the tract appropriated by the company. The company adduced evidence to show that there were two such springs in specific places. Plaintiff then offered evidence in rebuttal to prove that there were no such springs. *Held,* that the offer was properly a part of the plaintiff's case in chief, and while in the discretion of the court it might have been received, its rejection was not ground for reversal.

4. In the above case, the plaintiff was entitled to recover consequential, as well as direct damages ; compensation not only for the land actually taken, but also for the injury, if any, resulting therefrom to the residue of his land.

5. In the above case, it appeared that the plaintiff's dwelling-house was erected upon part of the land taken. The court instructed the jury that the damage done to the house was what it was fairly worth to remove the house, including the cost of putting it in as good order as before. *Held,* that this was error. The house on the land taken was part of the realty, and could not be considered except in connection therewith. The plaintiff was not required nor had he a right to remove any of the buildings or improvements on the land appropriated by the company, and hence an inquiry as to the cost of such removal was entirely foreign to the question before the jury.

6. In the above case, the court instructed the jury that although the company might protect their rights by fencing the reservoir, nevertheless the plaintiff as owner of the fee and riparian proprietor might approach and use the water. *Held,* that this was error. The company had the right to enclose the reservoir and prohibit access to it and the use of the water therein, by the plaintiff, as well as every one else. The plaintiff was, in no proper sense of the term, a riparian owner.

7. In the above case, the court instructed the jury that the damages should be computed without reference to the person of the plaintiff or the actual state of his business. *Held,* that this was not error.

8. In the above case, the court instructed the jury that the six jurors who had viewed the land, might take into consideration and inform the other jurors of the result of their observations. He further instructed them, however, that if upon any vital point the six who had seen the land differed from those who had not, the latter need pay no attention to what was said by the former, but might find the facts from the evidence. *Held,* that this was not error.

February 20th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, STERRETT and GREEN, JJ. TRUNKEY, J., absent.

ERROR to the Court of Common Pleas of *Lackawanna county :* Of January Term 1882, No. 57.

This was an appeal by the Providence Gas and Water Com-

[Finn *v.* Providence Gas and Water Co.]

pany, from a report of viewers, assessing damages for the taking of certain land and springs, belonging to one Michael Finn, by the said company, for the construction of a reservoir.

The facts of the case were as follows :—The Providence Gas and Water Company was incorporated by an Act of Assembly of February 23d 1867, Pamph. L. 249. It was by the said Act vested with all the immunities, franchises, rights and privileges granted to Gas and Water Companies, by the Act of March 11th 1857, Pamph. L. 82, and its supplements, and was subjected to all the liabilities, duties and restrictions therein mentioned; it was further specially empowered to enter upon any lands and to take the water from any rivulet, creek or stream for the purposes contemplated by the Act, provided that compensation for damage done should be made in the manner prescribed by the Act of 1857 aforesaid.

In pursuance of its corporate powers, the company built a dam across the outlet of a certain pond known as "Mud pond" and constructed a storing reservoir, covering nearly sixty acres of land, including at the upper end about twelve and a half acres of a farm belonging to one Michael Finn, together with the buildings and other improvements thereon, including a dwelling-house and also several springs by which the pond was in part supplied. Being unable to agree with Finn as to the compensation, the company filed a bond and took possession of the land. Viewers were appointed, and from their award the company took the present appeal.

The case being upon the trial list, the parties attended at the prothonotary's office to strike the jury. Sixteen names were stricken from the panel alternately by the plaintiff and defendant. Among the names thus stricken off was that of E. M. Peck. A special writ of venire then issued at the instance of defendant, containing the names of the jury as struck, and commanding the sheriff to cause the said jurors or six of the first twelve or more of them to view the land in controversy.

The sheriff selected six from the first twelve in the panel as struck, and took them upon the land. He subsequently made return, that he had caused said six jurors to view the premises in question.

When the case was called for trial before HANDLEY, P. J., the six jurors who had viewed the land were called to the jury box. In order to make up the full number of the jury, six other jurors were called from the panel. Among them was E. M. Peck. Plaintiff objected to the selection of said Peck as a juror, on the ground that he had been challenged at the prothonotary's office at the time the jury was struck to view the premises. The court, however, overruled the objection. Exception. (First assignment of error.) The plaintiff afterwards, as

the record showed, challenged peremptorily the said E. M. Peck, and one other juror. A. Frothingham, a juror whose name had been stricken off, was also called to the box. The record disclosed no objections to his capacity.

After the jury had been empanelled, the plaintiff adduced evi-dence to show the value of the land taken, and among other things called witnesses to prove, that there were no living springs on his farm outside of the line of the land taken by the defendant. The defendant then called a number of witnesses to show the existence of two such springs : one at a place where an an old log house formerly stood upon the farm, and the other in a field somewhat higher up. Plaintiff in rebuttal offered to prove that there never had been springs at those points. Defendant objected to the offer, on the ground that it was not rebuttal, as it was part of plaintiff's case in chief, that there no springs upon his land outside the lines taken by defendant, and all the evidence on that head given by defendant was in contradiction of the plain-tiff. Objection sustained. Evidence excluded. Exception. (Second assignment of error.)

The plaintiff requested the court to charge, inter alia, as follows:

2. " That the defendants have the right, if nesessary for the purposes of their charter, to enclose the pond or reservoir in question, and to prohibit the plaintiff from using any of the water of said reservoir or of said springs." *Answer.* " This point we cannot affirm, but say to you, that this company may enter upon the pond and may protect their rights from time to time by the construction of a fence or other matter to prevent the fouling of this water; but they cannot prevent, so long as Michael Finn remains the owner in fee of this property, from approaching the water and using the same as a riparian owner." (Sixth assignment of error.)

The defendant requested the court to charge, inter alia, as follows:

2. " The question in dispute in this case should be consid-ered without reference to the person of the owner or the actual state of his business." *Answer.* " This point we affirm." (Third assignment of error.)

3. " In estimating the damages, consequential or speculative damages are to be rejected." *Answer.* " This point we affirm." (Fourth assignment of error.)

8. " The damage to the house of plaintiff would only be what it would be fairly worth to remove the same to some near convenient place outside the land flowed by the defendant." *Answer.* " This point we affirm, with this qualification or addi-tion ; the cost ought to include the cost of putting this house in

as good order and repair as it was before the removal of the same." (Fifth assignment of error.)

10. "That the six jurors who went upon and viewed the premises of the plaintiff have the right in making up their verdict to take into consideration, and also to inform the other jurors who did not view the premises, all that they saw upon the ground; of the manner and extent of the occupancy of the land of the plaintiff by the defendants, and their judgment of the effect thereof." *Answer.* "This point we affirm, with this qualification; if upon any vital point—such as the number of wells upon the land, or the muck, the amount and its value—these six men who went upon the premises and viewed the property should disagree, then the other jurors need pay no attention whatever to what they say, but may find from the evidence, as presented on the one side and the other, the facts in the case." (Eighth assignment of error.)

11. "That under the pleadings and evidence in this case the plaintiff has a right to use the water in the reservoir on his land, and all other rights to the water, as a riparian owner." *Answer.* "This point we affirm. Now a riparian owner may use water passing by his land from day to day, but he may not use it so as to foul it or destroy the water when it passes his land to his neighbor below. In this case, so long as Michael Finn remains upon this property, and if he should continue there for the period of twenty-one years and over, then those who succeed him, may continue to use this water as a riparian owner, but may not to foul or destroy it." (Seventh assignment of error.)

Verdict for the plaintiff in the sum of $2,293.50, and judgment thereon. Plaintiff thereupon took this writ, assigning for error the ruling of the court in regard to the juror Peck, the rejection of the plaintiff's offers of evidence, and the answers to the points of plaintiff and defendant above cited.

*W. H. Stanton* (with whom were *Gunster* and *Wells*), for the plaintiff in error.—It was clearly error to admit Peck as a juror, his name having been struck from the panel. In order to exclude him plaintiff had to make use of one of his peremptory challenges. Subsequently, he peremptorily challenged three other jurors. A. Frothingham, another juror stricken from the panel, was then called. Plaintiff, having exhausted his peremptory challenges, could not exclude Frothingham. He was clearly, therefore, injured.

Plaintiff's offer of evidence was strictly in rebuttal: Roberts *v.* Young, 6 Wright 439; Gaines *v.* Commonwealth, 14 Wright 319.

The plaintiff in chief showed a negative generally, the

defense produced evidence from which they asked the jury to infer the existence of springs at specific places; the plaintiff then offered evidence in rebuttal as to these specific places: Silverman *v.* Forman, 3 E. D. Smith 322; Reed *v.* Kneass, Bright El. Cas. 416; Stetson *v.* Croskey, 2 P. F. Smith 230. As a matter of justice, it should have been allowed. " It must be a strong case which will allow a court to reject evidence because not offered at the right time, which may be decisive of the merits of the case :" Devall *v.* Burbridge, 6 Watts & S. 529.

It was error to instruct the jury that consequential damages were not recoverable : Pusey *v.* City of Allegheny, 10 W. N. C. 561.

The company could not compel the plaintiff to remove his house elsewhere, and then only compensate him for the removal. When it took the land on which the house was standing it took the house also, and must compensate the plaintiff for his entire loss: Brocket *v.* Ohio & Penna. R. R. Co., 2 Harris 241; Cleveland & Pittsburgh R. R. Co. *v.* Speer, 6 P. F. Smith 325; Ferree *v.* Sixth Ward School District of Allegheny, 26 P. F. Smith 376; Schuchardt *v.* Mayor of New York, 53 N. Y. 202. The provisions of the Act incorporating the water company defendant are in part supplied by the Act of April 24th 1869, Pamph. L. 93. Under the terms of this Act, the land entered upon and occupied by the company, the springs thereon, the reservoir constructed thereon, and the body of water stored in the pond or reservoir are in the possession of company and so far as the same is, or at any time may be necessary for the purposes of the charter of the company, such possession is exclusive : Railroad Company *v.* Skinner, 7 Harris 298; North Penna. R. R. Co. *v.* Rehman, 5 Am. Law Reg. 49; Connecticut Pass. R. R. Co. *v.* Holton, 32 Vt. 43; Troy & Boston R. R. Co. *v.* Potter, 42 Vt. 265; Clarke *v.* Bridge Co., 5 Wright 147; Junction R. R. Co. *v.* Boyd, 8 Phila. 224; Boston Gaslight Co. *v.* Old Colony & N. R. Co., 14 Allen 444; Jordan *v.* Woodward, 40 Me. 317; Cummings *v.* Barrett, 10 Cush. 186.

The water which the company gathers and stores up belongs to the company. Plaintiff had no rights thereto. He could not abstract or make any use of any part thereof : Rochdale Canal Co. *v.* King, 68 Eng. C. L. 122; Rochdale Canal Co. *v.* Radcliffe, 83 Eng. C. L. 287; Medway Navigation Co. *v.* Romney, 99 Eng. C. L. 575; Mitchell *v.* Parks, 26 Ind. 354; Waterworks *v.* Burkhart, 41 Ind. 364.

The provisions of the Act of March 11th 1857, §§ 14, 15, Pamph. L. 82, expressly prohibit the plaintiff from interfering in any way with the reservoir or the water therein.

Plaintiff is not a riparian owner and has no rights as such:

[Finn v. Providence Gas and Water Co.]

Bardwell v. Ames, 22 Pick. 333; Johnson v. Jordan, 2 Metc. 234; Merrifield v. Lombard, 13 Allen 16; Western Penna. R. R. v. Johnston, 9 P. F. Smith 290.

The company have the right to inclose the reservoir to keep cattle out of the water, and unless they do inclose it they cannot recover damages for the incursions of roving cattle or the injury done by them: Gregg v. Gregg, 5 P. F. Smith 227.

If Mr. Finn has any right to use the water at all, it is a right to use *only the surplus*, and this must be done in such a manner as not to interfere with the public easement: Kane v. Mayor of Baltimore, 15 Md. 240.

The jurors who had seen the land should not be permitted to give evidence to their fellows in the jury room. If it was desired that they should give their evidence as witnesses they were competent and should have been called for that purpose: Hauser v. Commonwealth, 5 Am. L. Reg. 668; Plank Road Co. v. Thomas, 8 Harris 91.

*W. H. Jessup* (with whom was *I. J. Post*), for the defendant in error.—The record shows that E. M. Peck was challenged by the plaintiff, and did not serve on the jury. The plaintiff had four peremptory challenges; he challenged but two, of whom Peck was one, so he was not injured. No objection or exception was taken to any other juryman. The jury in this case was a jury of view and not a struck jury, and it has always been the practice in this part of the state to first call, as was done in this case, the jurors who viewed, and the balance are called from the general panel. The jurors in such cases are struck for *viewing*, and not a *special* jury struck to try the case where no view is required.

The evidence offered by plaintiff was clearly not in rebuttal: Jessup v. Loucks, 5 P. F. Smith 363. Its admission or rejection was within the discretion of the court, and cannot be assigned for error: Gaines v. Commonwealth, 14 Wright 329; Levers v. Van Buskirk, 4 Barr 309.

It was clearly proper to consider the case without reference to the person of the plaintiff or the actual state of his business. Schuylkill Nav. Co. v. Thoburn, 7 S. & R. 421.

The instructions in reference to consequential damages, coupled with the remaining instructions of the court, were not error: Hornstein v. Atlantic & Gt. Western R. R. Co., 1 P. F. Smith 90; City of Allegheny v. Beach, Pitts Leg. J. 187; Shenango & Allegheny R. R. Co. v. Braham, 29 P. F. Smith 447; Brown v. Corey, 7 Wright 495; Delaware, Lack. & W. R. R. Co. v. Burson, 11 P. F. Smith 369; Penna. & N. Y. C. Co. v. Bunnell, 31 P. F. Smith 414; Danville, H. & W. R.

R. Co. *v.* Gearhart, 32 P. F. Smith 263; Pittsburg & Lake Erie R. R. Co. *v.* Robinson, 38 Leg. Int. 22.

Defendant did not acquire an exclusive right of possession of plaintiff's land, but an easement therein merely : Jerome *v.* Ross, 7 Johns. Ch. 315; Zack *v.* Penna. R. R. Co., 1 Casey 396; Lance's Appeal, 5 P. F. Smith 16.

It was proper for the six jurors who had seen the land to communicate the result of their observation to their colleagues, and this might be considered by the jury in agreeing upon a verdict.

Mr. Justice STERRETT delivered the opinion of the court, October 2d 1882.

The second section of the Act of 1867, incorporating the defendant company, invests it with all the immunities, franchises, rights and privileges authorized and granted to both gas and water companies by the Act of March 11th 1857, entitled "An Act to provide for the incorporation of gas and water companies," subject to all liabilities, duties and restrictions therein mentioned. For the purposes contemplated by the Act, the company is specially empowered by the third section thereof, "to enter upon any lands, roads, streets, lanes or inclosures, . . . . and to take the water from any rivulet, creek or stream. Provided, that compensation for damages done shall be made in the manner prescribed by the Act aforesaid :" P. L. (1867) 249.

In the exercise of its corporate powers, the company built a dam across the outlet of " Mud pond," and constructed a storing reservoir covering nearly sixty acres of land, including, at the upper or westerly end thereof, about twelve and a half acres of plaintiff's farm, together with buildings and improvements, orchard and several springs thereon, by which the pond was in part supplied. Failing to agree with him as to the amount of damages to which he was entitled, the company filed a bond and took possession of the land. Viewers were appointed, from whose award an appeal was taken, and on trial of the issue framed for the purpose of determining the amount of damages done and likely to be done to plaintiff by reason of taking and overflowing his land, the several questions presented by the specifications of error arose.

The first is, in overruling plaintiff's objection to one of the jurors, who had been struck from the panel when the jury of view was selected. It is contended he was entitled to four peremptory challenges in addition to those previously struck from the list in the prothonotary's office, and that in empanelling the jury for trial, none of those who had been struck should have been called. The Act of 1834 provides that whenever a view shall be allowed in any case, and a jury shall be

[Finn *v.* Providence Gas and Water Co.]

struck from the list of persons drawn for the ensuing court, the prothonotary, upon the precept of either party, shall issue a special venire, containing the names of such jury, with a clause commanding the sheriff to cause the said jurors, or six of the first twelve of them, to view the premises at some convenient time before the trial, etc.: Purdon 837, pl. 76. It also directs that, at the calling of the jury to try a cause in which a view shall have been had, those of the viewers who shall appear, shall first be sworn, and so many jurors shall be drawn and added to said viewers, as shall, after default and challenges allowed, make up the number twelve, to be sworn for the trial of the cause: Id. pl. 78. We are clearly of opinion that the additional number of jurors thus to be called, should be drawn from the names attached to the special venire which the prothonotary is directed to issue. This necessarily excludes those who have been previously struck by the parties from the general list: 1 Troub. & H. Prac. 560. But the plaintiff has no reason to complain of what was done, unless he was thereby deprived of one of his four peremptory challenges ; and the record fails to show that he was. The error was, therefore, harmless.

There was no error in excluding the testimony complained of in the second assignment. The evidence offered was properly a part of the plaintiff's case in chief ; and, while, in the discretion of the court, it might have been received, its rejection is not ground of reversal.

We think the court erred in affirming defendant's third point, whereby the jury was instructed that "in estimating the damages, consequential or speculative damages are to be rejected." The company, as we have seen, is required by its charter to make compensation for damages done. This includes consequential as well as direct damages ; compensation not only for the land actually taken, but also for the injury, if any, resulting therefrom to the residue of his farm. It is true the learned judge, in affirming defendant's first point, said to the jury that "the only safe rule in estimating the injury to the property, if there is any, is to inquire what the farm, unaffected by the building of the dam, would have sold for at the time the injury was committed, and what it would sell for as affected by the injury, and the difference is the true measure of compensation." This was followed, however, by the specific instruction complained of, that consequential damages should be rejected ; and thus the measure of damages previously stated, was qualified in a way calculated to mislead the jury. The fourth assignment is sustained.

In answering defendant's eighth point, a rule of damages, applicable solely to the dwelling-house on the land taken, was

[Finn *v.* Providence Gas and Water Co.]

given to the jury. They were told, in substance, that the damage to the house was what it was fairly worth to remove the same to some convenient place outside the land covered by the reservoir, including the cost of putting it in as good order as before. This is justly the subject of complaint in the fifth assignment. The house on the land taken was part of the realty, and could not be considered except in connection therewith. The plaintiff was not required, nor had he a right to remove any of the buildings or improvements on the land appropriated by the company, and hence an inquiry as to the cost of such removal was entirely foreign to the question before the jury.

The subject of complaint in the sixth assignment is the refusal of the court to affirm plaintiff's second point. The company undoubtedly has the right, in its discretion, to enclose the reservoir, and prohibit the plaintiff from using, either the water therein, or the springs on the land appropriated by it for corporate purposes. The point should have been affirmed.

The seventh assignment involves a similar error. What the learned judge said as to the right of a riparian owner to use water, etc., may be all very true, but it was inapplicable to this case, and was well calculated to mislead the jury to the prejudice of the plaintiff. If the company deems it necessary, it has an undoubted right to enclose its reservoir, and prohibit access to it by the plaintiff and everybody else. The plaintiff, as owner of the land adjoining that taken by the company for the purpose of constructing its reservoir, is in no proper sense of the term a riparian owner.

None of the remaining assignments require special notice. They are not sustained.

Judgment reversed, and a venire facias de novo awarded.