# Citizens Electric Co., Appellant, *v.* Susquehanna Boom Co. et al.

*Waters—Navigable rivers—Susquehanna River—Grant—High- and low-water mark—Riparian owners — Remedy-at-law — Misuse of franchise—Act of June 19, 1871, P. L. 1360.*

1. The Susquehanna River is a navigable stream and therefore a public highway, and a grant of land along such river extends to ordinary low-water mark.

2. Between high- and low-water mark, the grantee takes the land subject to the rights of the public, and he may use it for such purposes as do not interfere with the free flow and navigation of the waters.

3. The Commonwealth may, by proper legislation, grant to others its right to use the bed of the stream, and may provide in such grant that the riparian rights incident to ownership of land along a navigable river shall be subjected to public uses.

4. Such riparian rights do not rise any higher than similar ones along a nonnavigable river.

5. Where a boom company acquired title by eminent domain to a riparian owner's rights to land between low-water mark and "nine feet in perpendicular height above low-water mark" and has flooded such owner's land through a long period of time, without protest or objection, it will be presumed that due compensation was made by the boom company for the exercise of such easement.

6. The condemnor has the free and exclusive enjoyment and use of the land taken for a public purpose as though the surface and so much beneath as may be necessary for support was owned in fee (a base or conditional fee), terminable on the cesser of the use for condemnation purposes.

7. In such case, while the boom company did not acquire title to the water, it did enjoy a certain use of it, and while it remained in the company's dam, its use as to adjoining owners was exclusive.

8. If a riparian owner has suffered damage he has an adequate remedy at law.

9. If the boom company is misusing its corporate franchise, the matter may be inquired into by the State, but not by a bill in equity under the Act of June 19, 1871, P. L. 1360, at the instance of a private person.

10. An upper riparian owner has the right to the use of the water of the stream for any legal purpose, but he must return it to its channel without contamination or substantial diminution.

Argued February 15, 1921. Appeal, No. 143, Jan. T., 1921, by plaintiff, from decree of C. P. Lycoming Co., Sept. T., 1919, No. 1, dismissing bill in equity, in case of Citizens Electric Co. v. Susquehanna Boom Co. and Lycoming Edison Electric Co. Before FRAZER, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Bill in equity for injunction. Before WHITEHEAD, P. J.

The opinion of the Supreme Court states the facts.

The court dismissed the bill. Plaintiff appealed.

*Error assigned,* among others, was decree, quoting it.

*Gifford K. Wright,* of *Alter, Wright & Barron,* and *Mortimer C. Rhone,* for appellant.—Appellant as riparian owner had a right to use the water: Mayor v. Com'rs of Spring Garden, 7 Pa. 348; Ball v. Slack, 2 Wh. 508; Zug v. Com., 70 Pa. 138; Fulmer v. Williams, 122 Pa. 191; Filbert v. Dechert, 22 Pa. Superior Ct. 362.

Equity will relieve against the obstruction of a stream by the owner of lower land to the injury of the owner of upper land bordering upon it: Beech v. Kuder, 15 Pa. Superior Ct. 89; Colket v. Verner, 236 Pa. 285; Masson's App., 70 Pa. 26.

*N. M. Edwards,* with him *Max L. Mitchell* and *Candor & Munson,* for appellees.—Equity may be invoked to protect rights which are admitted or have been established. It will not intervene where the situation complained of has been of comparatively long standing: Keystone Wood Co. v. Susquehanna Boom Co., 240 Fed. 296; Heilman v. Union Canal Co., 37 Pa. 100; Vandivort v. Hunter, 265 Pa. 585.

Riparian rights are not easements or appurtenances, but are inseparably annexed to the soil and are part and parcel of the land itself: Hough v. Doylestown, 4 Brewst. 333; Shenandoah Co.'s App., 2 W. N. C. 46; Citizens Electric Co. v. Susquehanna Boom Co., 227 Pa. 448.

The owner cannot be deprived thereof except by due process of law upon compensation made, and, generally, a legal action will afford an ample remedy: Irving v. Media, 10 Pa. Superior Ct. 132; 194 Pa. 648.

Plaintiff has an adequate remedy at law: Lewisburg Bridge Co. v. Union & Northumberland Counties, 232 Pa. 255; Curran v. Delano, 235 Pa. 478.

OPINION BY MR. JUSTICE KEPHART, April 25, 1921:

The Susquehanna Boom Company, one of the defendants, incorporated under the Act of 1846, with its supplement of 1866, was empowered to erect and maintain

a dam across the west branch of the Susquehanna River, to be constructed so as not to raise the water more than nine feet in perpendicular height above low-water mark, and for this purpose the company possessed the right of eminent domain. It could not take private property until adequate compensation had been paid or secured, and the security required was a bond in the sum of $150,-000 with sureties to be approved by the Court of Common Pleas of Lycoming County to be filed before the company could proceed to erect its dam. These preliminary steps were taken and the company erected its dam prior to 1871. The Citizens Company, plaintiff, appellants here, some time afterward acquired land along the north bank of the river, part of which is immediately above and west of the dam, and, because of such ownership, claims riparian rights, including the right to take from the dam quantities of water necessary to enable it to operate its engines, boilers or plant. Such water was taken by means of pipes laid into the dam, around which the company had driven piles and placed timbers to protect the intake from ice, rubbish and other matters. This pipe has been used and maintained for ten years or more. It insists on the natural flow and impoundage of the water being maintained in and around its pipes as they were placed in the dam, and this demand becomes more urgent during periods of drought, as diversion or interference with the supply for any purpose injures the operation of its works.

Notwithstanding the requirements as asserted in its bill, the boom company, one of the defendants, by an opening or gate in the breast of the dam, allowed the water to pass out as a water power for the operation of the Lycoming Edison Electric Company's plant below the dam, thus diverting the water from the river and dam to the latter company's plant with the avowed purpose of depriving plaintiff of its reasonable use. This gate or opening was constructed before plaintiff had acquired title to the land, and it so happens that its in-

take is above and close to the gate, and when it is opened the water, rushing out from the dam, creates a suction at the intake, causing an accumulation of rubbish, sticks and grass around the pipe, thus interfering with plaintiff's use of the water for manufacturing purposes. Defendant removed the piles and timber protection and by force prevented others from being replaced; the dam was dredged close to the intake and the course of the socalled channel changed by defendant. Plaintiff, to prevent further damage, filed this bill against the boom company and the Lycoming Edison Electric Co. to restrain the use of the water in the dam for any purpose other than the operation of the boom, to prohibit the use by the electric company, as indicated, and its interference therewith by plaintiff and with the protections placed about its pipe. A demurrer was filed and the bill was dismissed.

To invoke the aid of a court of chancery, plaintiff must ground its right for relief by showing with definiteness that it has an absolute or special property in the thing claimed, of such character that it may, against the protest of any contending owner, place its structures, pipes and piles where it has erected them, and, as well, show its right to use the water for the purpose, manner and amount demanded. Its bill must present clear statements of facts, sufficient to support a decree, otherwise it cannot be granted.

The Susquehanna River is a navigable stream and therefore held to be a public highway for the use of the citizens of the Commonwealth, and a grant of land along the river extends to ordinary low-water mark. Between high- and low-water mark the grantee takes the land subject to the rights of the public and he may use it for such purposes as do not interfere with the free flow and navigation of the waters: Fulmer v. Williams, 122 Pa. 191; Leaf v. Pa. Company, 268 Pa. 579.

The Commonwealth may, by proper legislation, grant its right to use the bed of a navigable stream, and may

provide in such grant that the riparian rights incident to ownership of land along the river shall be subject to public uses. These riparian rights do not rise any higher than similar ones along a nonnavigable stream, and, when the riparian rights and land adjoining a stream are subjected to public uses through appropriate proceedings, the status of the adjoining owner along a navigable river does not differ from that of an adjoining land owner along a nonnavigable river or stream whose riparian rights and adjoining land have been condemned for public use.

It is quite clear, under the bill, the defendant boom company acquired title to the riparian owner's rights to the land between low-water mark and "nine feet in perpendicular height above low-water mark" by virtue of its right of eminent domain under the several acts of assembly referred to. "As the land here involved [being the same as that involved in the present litigation] has been flooded by the dam pool for upwards of fifty years, and as there is no assertion of any protest or objection by its successive owners, we are warranted in assuming that due compensation was made by the boom company for the exercise of its easement of flooding said land, by virtue of a proceeding under the bond or by adjustment and conveyance between the parties" (Keystone Wood Co. v. Susquehanna Boom Co., 240 Fed. 296), and, if it was not so adjusted, the owner injured at the time of taking had his right for damages under the bond: Citizens Electric Company v. Boom Co., 227 Pa. 448. And, had the title passed by amicable adjustment for the purpose of the present litigation, the boom company's right would not be different in kind from that obtained by condemnation. Such title possesses the same attributes as are ordinarily implied in the acquisition of property by a company having the right of eminent domain. This has been variously defined, and in this State it may be said generally to be an exclusive easement, closely akin to a fee, sometimes termed a base, conditional or quali-

fied fee, with the right of reverter to the original owner, his heirs or assigns, in case of abandonment. The condemnor has the free and exclusive enjoyment and use of the land taken for a public purpose as though it was owned in fee, and, even though immediate or continuous use may not be made of it, neither title nor possession will revert to the original owner unless there is an actual abandonment. "It is a right to exclusive possession, to fence in, to build over the whole surface, to raise and maintain any appropriate superstructure, including necessary foundations, and to deal with it......as absolutely and as uncontrolled as an owner in fee. There was no such easement at common law, and it may well be doubted if it is not a misnomer to extend to this newly-invented interest in land the name of easement. It would seem to be rather a fee in the surface and so much beneath as may be necessary for support, though a base or conditional fee, terminable on the cesser of the use for railroad purposes": Pa. Schuylkill Valley Railroad Co. v. Reading Paper Mills, 149 Pa. 18; Reading City v. Davis, 153 Pa. 360; Pittsburgh, Fort Wayne & Chicago Ry. Co. v. Peet, 152 Pa. 488; Dilts v. Ry. Co., 222 Pa. 516; Phila. v. Ward, 174 Pa. 45; Gillespie v. Ry. Co., 226 Pa. 31; Marine Coal Co. v. R. R. Co., 246 Pa. 478, 489; Ferguson v. R. R. Co., 253 Pa. 581, 587. A base or conditional fee at common law was one made to determine or be defeated on the happening of some contingent event or act: 1 Washburn, sec. 168; Tiedman on Real Property, sec. 36.

In construing an act giving a water company the right to take water and land necessary for corporate uses, and similar in this respect to the general act through which these companies function and to the boom company's act, this court said, "If the company deems it necessary, it has an undoubted right to enclose its reservoir and prohibit access to it by the plaintiff and everybody else. The plaintiff, as owner of the land adjoining that taken by the company for the purpose of constructing its reser-

voir, is in no proper sense of the term a riparian owner":
Finn v. Providence Gas and Water Co., 99 Pa. 631, 640.
As this is a navigable stream, whatever may be the rights
of the public generally to the use of the water as it
passes through the dam or above or below the dam, the
rights appertaining to the land owned by plaintiff
would rise no higher under this act than that adjudged
as incident to land along a nonnavigable stream; that
is, the boom company had the exclusive right to posses-
sion of the land and water. It could have fenced or
enclosed the pond or reservoir and thus prevented
plaintiff from placing its pipe, piles and timbers over its
land. While the boom company did not acquire title to
the water, it did enjoy a certain use of it, and while it
remained in the dam its use as to adjoining land owners
was exclusive. The boom company's right is not to be
restricted solely to the right to collect water in a basin
and store it until called upon for corporate uses, with a
joint right in an adjoining owner to use the land along
the dam and the water in it for such purposes not then
actually depriving the company of the use of the water,
as, for instance, the erection of a boathouse along the
dam, building wharves in it, boating on the surface and
the right to cut ice, or the building of water pipes or
projections into the dam: Reading City v. Davis, supra.
To so hold would not only curtail the estate secured, but
it might so weaken the right or power of eminent do-
main as to cause it to be of no practical effect or use.
The enabling act gave rights to the boom company rela-
tively as high as those given to water companies: Finn
v. Gas and Water Co., supra.

The facts in the case before us are vastly different
from those presented in Mayor v. Commissioners of
Spring Garden, 7 Pa. 348, and the principles of law here
asserted are not in conflict with that decision; the au-
thorities cited by appellant on this phase of the case do
not reach the point. Nor do the quoted expressions from
the Citizens Electric Co. v. Susquehanna Boom Com-

pany, 227 Pa. 448, control the question now under discussion. That case did not attempt to define what rights this appellant had in the property it now owns. If the appellant has suffered any damage, it has an adequate remedy at law: Irving v. Media Borough, 10 Pa. Superior Ct. 132. And if the defendant boom company is misusing its corporate franchise, the matter may be inquired into by the State, but not by a bill in equity under the Act of June 19, 1871, P. L. 1360, at the instance of a private person: Croyle v. Johnstown Water Co., 259 Pa. 484; Gring et al. v. Sinking Springs Water Co., 270 Pa. 232.

There is another vital objection to plaintiff's bill. Assuming that it had riparian rights, it does not follow that it included the use of water in the quantity and for the purpose claimed. "In a long, unbroken line of cases it has been held that the diversion of water from its natural course in a stream by a riparian owner for purposes other than those incident to the proper enjoyment of the riparian land is unlawful. The upper riparian owner has a right to the use of the water of the stream for any legal purpose provided he returns it to its channel without contamination or substantial diminution": Penna. R. R. Co. v. Miller, 112 Pa. 34; Scranton G. & W. Co. v. Del., L. & W. R. R., 240 Pa. 604, 610.

There is no averment in the bill that the large quantities of water for plaintiff's extraordinary use did not diminish the supply necessary for the boom company, or that, after a temporary use, it was returned to the river, and, in view of the positive statement that in time of drought any diminution or diversion was harmful to plaintiff's works, it is apparent it was exceeding any supposed right in itself to take the water.

From a careful review of the authorities we conclude appellant did not present such an undoubted right to do the things it had been and was proposing to do, as was necessary to support its bill.

The decree of the court below is affirmed at the costs of appellants.